IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

In re: MICHAEL GENE PARSONS,
an intellectually disabled person
involuntarily confined in the
Mildred Mitchell-Bateman Hospital,
Huntington, West Virginia

MICHAEL GENE PARSONS, by his
legal guardians, Carol Ruth Parsons
and William Lloyd Parsons,

      Petitioner,

v.                                   Case No. 2:12-cv-05885

ROCCO S. FUCILLO, in his capacity
as the Secretary of the West Virginia
Department of Health and Human
Resources, a state agency,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Michael Gene Parsons, the petitioner, is a middle-aged, intellectually and developmentally disabled person who is under the jurisdiction of the Circuit Court of Kanawha County, West Virginia, and involuntarily committed at the Mildred Mitchell-Bateman Hospital, a facility designated by the West Virginia Department of Health and Human Resources, upon a finding that he is incompetent to stand trial on a criminal charge. He has been under that Court's jurisdiction since late 2008.

Pending before the court is the petitioner's verified application for a writ of habeas corpus under 28 U.S.C. § 2254, in which he seeks the following relief:

      1.  A declaration that the continued confinement of Michael in the Mildred Mitchell-Bateman Hospital is in violation of his constitutional rights;

      2.  An order that Michael be relieved of the present conditions of confinement in the Mildred Mitchell-Bateman Hospital in Huntington, West Virginia;

      3.  An order that a guardian *ad litem* be appointed for Michael or that standing be granted to Carol and William in the state court so that proceedings may commence, accordingly;

      4.  A declaration that the statutory procedure set forth in W. Va. Code § 27-6A-3 is unconstitutional as applied to individuals who are intellectually disabled, and who, as a result, are found to be incompetent to stand trial; and

      5.  An order granting such other relief to which the Court deems the petitioner is entitled.

(ECF No. 1, at 20-21.)

The respondent has filed a motion to dismiss for the reason that the petitioner has failed to exhaust his state remedies.  (ECF No. 8, at 2.)  The respondent further contends that the petitioner has received due process of law and that he has not been denied his right to equal protection of the law.  (ECF No. 7, at 9, 14.)

The petitioner filed a reply to the motion, arguing that the circumstances of this matter render any recourse in the state courts ineffective to protect the petitioner's rights.  (ECF No. 11, at 3.)  The reply further contends that the confinement of Michael Parsons in the State's psychiatric facility violates his rights to due process and to equal protection of the laws.  (*Id.*, at 7.)

On March 13, 2013, the undersigned conducted a hearing, at which the parties were asked to address the following matters:

Whether the Order entered May 7, 2009 in *State v. Parsons* is a final and appealable order;
An explanation of the maximum sentence used and whether a sentence has been imposed;
The procedure for appealing and for exhausting state remedies if the defendant has not been convicted and is not criminally responsible;

2

Whether W. Va. Code § 27-6A-3(h) includes a standard which comports
with the Supreme Court's holding in *Addington v. Texas*, 441 U.S. 418, 427
and 433 (1979); and
Whether W. Va. Code § 27-6A-3(h) is consistent with the Supreme Court's
holding in *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

(ECF No. 21.)

## Facts and Procedural History

It is not disputed that a charge of first degree sexual abuse, in violation of W. Va.
Code § 61-8B-7, was filed against the petitioner on September 29, 2008, after the
petitioner allegedly took his then two year old niece to the bathroom, disrobed her and
himself, hugged her and touched his penis to her vaginal area, without penetration.
(Criminal Complaint, *State v. Parsons*, No. 08-F-3025, Magistrate Court of Kanawha
County, ECF No. 24-23.)  The petitioner made his initial appearance in the Magistrate
Court of Kanawha County, West Virginia on September 29, 2008; bond was set at
$100,000 full surety.  On September 30, 2008, bond was posted and the petitioner was
released.  On October 7, 2008, the public defender was appointed for the preliminary
hearing, which was set for that date.  Gail Michaelson appeared for the petitioner;
probable cause was found based on the testimony of a witness and the petitioner was
bound over to Circuit Court.  The presiding magistrate required home incarceration as a
condition of bond.

The statutes at issue in this case are found at Chapter 27, Article 6A of the West
Virginia Code, "Competency and Criminal Responsibility of Persons Charged or
Convicted of a Crime."  Section 2 requires a court of record to order a forensic
evaluation of a defendant's competency to stand trial whenever there is reasonable
cause to believe that defendant is incompetent.  W. Va. Code § 27-6A-2(a).  A criminal
responsibility evaluation is deferred.  (*Id.*)

3

The case was opened in Circuit Court from Magistrate Court on December 16, 2008, on which date a motion for a mental status examination was filed by counsel for the petitioner.  (Circuit Court docket sheet, *State v. Parsons*, No. 08-CRM-571, ECF No. 24-22.)

At a short hearing on December 23, 2008, the petitioner's counsel commented, "[h]is Full Scale IQ is now 62, but I do not believe he really understands what's going on. * * *  I think before we go forward I think that he needs to be evaluated as to criminal responsibility and whether or not he really understands the legal process."  (ECF No. 24-1, at 3.)  The prosecutor did not object, and suggested an evaluation by Dr. Ralph Smith. (*Id.*)  The remainder of the hearing concerned the conditions of the petitioner's release on home confinement.  No evidence was received with respect to the offense set forth in the Criminal Complaint.

The prosecutor prepared an order (apparently not inspected by the petitioner's counsel), which the assigned Circuit Judge, the Hon. Louis H. Bloom, entered.  (ECF No. 24-12.)  It ordered that a competency and a criminal responsibility evaluation be performed by Dr. Ralph Smith.  Dr. Smith examined the petitioner on January 14, 2009. (ECF No. 25-3.)  Dr. Smith's diagnoses were "Pervasive Developmental Disorder" and "Mild Mental Retardation."  (*Id.*, at 9.)  His Assessment and Opinion were:

> The defendant is not competent to stand trial, in our opinion, because of his mental retardation, lack of understanding of court room procedures and the role and function of courtroom participants.  He cannot appreciate sufficiently what he is facing in order to assist his attorney in his own defense.  Both his IQ and his adaptive functioning are low.
>
> We further opine that at the time of the alleged crime, because of his developmental problem and mental retardation, the defendant was not capable of conforming his conduct to the requirements of law.

(*Id.*)

4

Shortly after a court receives a competency evaluation report, West Virginia Code § 27-6A-3(a) requires the court to make a preliminary finding on the issue of whether the defendant is competent to stand trial. Section 27-6A-3(c) provides that the court of record shall "make a finding of fact upon a preponderance of the evidence as to the defendant's competency to stand trial based on whether or not the defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and whether he or she has a rational as well as a factual understanding of the proceedings against him or her." Section 27-6A-3(e) provides that if "the defendant is found not competent to stand trial, the court of record shall at the same hearing, upon the evidence, make further findings as to whether or not there is a substantial likelihood that the defendant will attain competency within the next ensuing three months."

Judge Bloom conducted a short hearing on February 10, 2009 (five page transcript, ECF No. 24-2). Dr. Smith's report was filed. (*Id.*) In a document entitled "Court's Finding on Defendant's Competency to Stand Trial," entered February 11, 2009, the Circuit Court of Kanawha County found as follows:

> [D]efendant is not competent to stand trial because he does not exhibit sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him.
> This Court further **FINDS** that the Defendant is not substantially likely to attain competency and that charges against the defendant do involve an act of violence against a person.
> This Court hereby **ORDERS** the defendant be committed to William R. Sharpe Hospital, which is the least restrictive environment available to manage the defendant and allow for the protection to the public.
> This Court further **FINDS** that it maintains jurisdiction over the defendant for twenty-five (25) years, the maximum possible sentence defendant would have received if he had been convicted of the charges, or until the defendant regains competency and the criminal charges reach

> resolution whichever is sooner.  The end date of the maximum sentence
> period is February 10, 2034, and the Court's jurisdiction is extended
> thereafter by 10 days to allow the prosecuting attorney to institute civil
> commitment proceedings under Article 5 of Chapter 27 of the West
> Virginia Code.  Thereafter the defendant shall be released from the facility
> if not first civilly committed.

(ECF No. 24-13.)  The "Court's Finding" was prepared by the prosecutor but apparently

was not inspected by the petitioner's counsel.  None of the findings set forth were stated

on the record at the hearing.   No evidence (other than Dr. Smith's report) was

presented.  There is no statement that the finding was upon "a preponderance of the

evidence."

The Circuit Court's "jurisdiction over the defendant" for 25 years was based on

W. Va. Code § 27-6A-3(h), which reads as follows:

> (h)  If at any point in the proceedings the defendant is found not
> competent to stand trial and is found not substantially likely to attain
> competency, and if the defendant has been indicted or charged with a
> misdemeanor or felony in which the misdemeanor or felony does involve
> an act of violence against a person, then the court shall determine on the
> record the offense or offenses of which the person otherwise would have
> been convicted, and the maximum sentence he or she could have received.
> A defendant shall remain under the court's jurisdiction until the expiration
> of the maximum sentence unless the defendant attains competency to
> stand trial and the criminal charges reach resolution or the court dismisses
> the indictment or charge.   The court shall order the defendant be
> committed to a mental health facility designated by the department that is
> the least restrictive environment to manage the defendant and that will
> allow for the protection of the public.  Notice of the maximum sentence
> period with an end date shall be provided to the mental health facility.
> The court shall order a qualified forensic evaluator to conduct a
> dangerousness evaluation to include dangerousness risk factors to be
> completed within thirty days of admission to the mental health facility and
> a report rendered to the court within ten business days of the completion
> of the evaluation.  The medical director of the mental health facility shall
> provide the court a written clinical summary report of the defendant's
> condition at least annually during the time of the court's jurisdiction.  The
> court's jurisdiction shall continue an additional ten days beyond any
> expiration to allow civil commitment proceedings to be instituted by the
> prosecutor pursuant to article five of this chapter.  The defendant shall
> then be immediately released from the facility unless civilly committed.

6

At the February 10, 2009 hearing, based on Dr. Smith's report, there was no dispute that the defendant is not competent and is not likely to attain competency.  It appears that the parties agreed that the defendant had been charged with a felony which involved an act of violence against a person, although this was not mentioned during the hearing.  There was also no statement made as to "the offense of which the person otherwise would have been convicted" or as to the maximum sentence he could have received.

The "Court's Finding" does not refer to the statutory citation of the "offense of which the person otherwise would have been convicted" but it appears that the parties and Judge Bloom relied on W. Va. Code § 61-6B-7, which reads as follows:

> (a) A person is guilty of sexual abuse in the first degree when:
> (1) Such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion; or
> (2) Such person subjects another person to sexual contact who is physically helpless; or
> (3) Such person, being fourteen years old or more, subjects another person to sexual contact who is younger than twelve years old.
> (b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in a state correctional facility not less than one year nor more than five years.
> (c) Notwithstanding the provisions of subsection (b) of this section, the penalty for any person violating the provisions of subsection (a) of this section who is eighteen years of age or older and whose victim is younger than twelve years of age, shall be imprisonment for not less than five nor more than twenty-five years and fined not less than one thousand dollars nor more than five thousand dollars.

Thus Judge Bloom assumed jurisdiction over the petitioner for 25 years, or until February 10, 2034.  He directed that a dangerousness evaluation be conducted within thirty days of the petitioner's admission to Sharpe Hospital, and that an annual

summary report of the petitioner's condition be submitted. (ECF No. 24-13.) The petitioner was allowed to self-report. (*Id.*) No petition for appeal was filed.

On May 1, 2009, Judge Bloom conducted another very short hearing on the petitioner's competency to stand trial and his criminal responsibility. The transcript (five pages) reflects that Justin Collin appeared for the petitioner. (ECF No. 24-3.) A report dated March 30, 2009, from William R. Sharpe, Jr., Hospital (ECF No. 25-4) was admitted. No other evidence was presented. Judge Bloom entered a document entitled "Court's Finding on Defendant's Competency to Stand Trial," and found that the petitioner

> remains not competent to stand trial because he does not exhibit sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him. Continued placement is recommended by the report.
>
> This Court further **FINDS** that the defendant is not substantially likely to attain competency and that the charges against him involve an act of violence against a person. The defendant also presents a danger to himself and to others.
>
> This Court hereby **ORDERS** that the defendant be committed to a mental health inpatient facility as designated by the West Virginia Department of Health and Human Resources, which is the least restrictive environment available to manage the defendant and to allow for the protection of the public.
>
> This Court finds that the defendant would have been convicted of the offense of First Degree Sexual Abuse but for the determination that he is not competent to stand trial, and the Court finds that the maximum sentence he would have received is five (5) years.
>
> This Court further **FINDS** that it maintains jurisdiction over the defendant for five (5) years, the maximum possible sentence defendant would have received if he had been convicted of the charges, or until the defendant regains competency and the criminal charges reach resolution whichever is sooner. The end date of the maximum sentence period is December 23, 2013, and the Court's jurisdiction is extended thereafter by 10 days to allow the prosecuting attorney to institute civil commitment proceedings under Article 5 of Chapter 27 of the West Virginia Code. Thereafter the defendant shall be released from the facility if not first civilly committed. * * *

> The medical director of William R. Sharpe Hospital shall submit an annual summary report of defendant's condition during the time of the Court's jurisdiction.

(ECF No. 24-14.)   The "Court's Finding" erroneously indicates that Gail Michelson appeared for the petitioner.   There is no explanation as to why the jurisdiction over Michael Parsons was *sua sponte* reduced from 25 years to five years, despite the provisions of W. Va. Code § 61-8B-7(c).[1]   Once again, no evidence was presented that the petitioner had committed an offense.    The only information concerning his dangerousness was a listing of his risk factors: "male gender, low socioeconomic status, low intelligence, criminal charges, employment problems and poor insight."  (ECF No. 25-4, at 4.)  No petition for appeal was filed.

Another dangerousness evaluation was performed and a report dated July 30, 2009 was provided to the Circuit Court.  (ECF No. 25-5.)  The report concluded that the petitioner has dangerousness risk factors of male gender, low socioeconomic status, low intelligence, poorly educated, criminal charges, and lack of insight.  (*Id.*, at 4.)  The evaluating physician recommended against discharge into the community and commented that he should, at no time, have access to children.  (*Id.*, at 5.)  The petitioner was subsequently transferred to Mildred Mitchell-Bateman Hospital ("MMBH") in August, 2009.

On February 24 and 26, 2010, Judge Bloom had additional hearings concerning the petitioner.  On February 24, Timothy Saar, Ph.D., who had been consulted by the petitioner's family, testified that the petitioner would probably never be competent to stand trial.  (ECF No. 24-4, at 42.)  He opined that, properly supervised, the petitioner

---

[1] At a hearing on February 26, 2010, Judge Bloom acknowledged that the 25 years had been "a mistake," without further explanation.  (ECF No. 24-5, at 9.)

was not a significant threat to re-offend.  (*Id.*, at 42-43.)  On February 26, Dr. Bobby Miller, a psychiatrist at MMBH, testified that in his opinion, the petitioner <u>was</u> competent.  (ECF No. 24-5, at 4.)  He stated: "Mr. Parsons has a rational factual understanding of the charges against him and is able to communicate in a rational manner with his attorney to facilitate his own defense." (*Id.*)  Dr. Miller further testified that he believed that the petitioner was not criminally responsible.  (*Id.*, at 8.)  With respect to dangerousness, Dr. Miller advised that the staff at MMBH was "in the process of mitigating his dangerousness." (*Id.*, at 12.)  He anticipated that in September, 2010, he would be able "to recommend to the Court that [Michael Parsons] could be transitioned home with outpatient services, most likely individual rather than group, that could occur in his community." (*Id.*)  At the conclusion of the hearing, Judge Bloom made the following finding:

> [B]ased on the testimony of Dr. Miller today, I'm going to find that, that Mr. Parsons is competent to stand trial but lacks criminal responsibility; and pending further disposition in this case, that he is to remain at Bateman under the current scheme of things and that we will review his progress perhaps in August.

(*Id.*, at 23.)  This finding was memorialized in a document captioned "Return on Further Evaluation," filed March 9, 2010, which states:

> Having reviewed the report dated February 25, 2010, from Mildred-Mitchell Bateman Hospital,[2] testimony from Dr. Robert [sic; Bobby] Miller and hearing arguments of counsel and the evidence presented, this Court **FINDS** that the defendant is competent to stand trial because he does exhibit sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him.   However, continued placement is recommended by the report, and Dr. Miller.
>     The Court further **FINDS** that the defendant is not criminally responsible.

---

[2] No such report has been provided.  Dr. Miller indicated that he had not prepared a written report.  (ECF No. 24-5, at 17.)

> The Court further **FINDS** that the charges against him involve an act of violence against a person.  The defendant also presents a danger to himself and to others.

(ECF No. 24-15.)[3]   A hearing was set for August 5, 2010.  (*Id.*)   The hearing was apparently continued until November.

On November 12, 2010, Judge Bloom conducted another hearing at which Dr. Miller testified and noted that Michael Parsons is placed at MMBH as "guilty by reason of mental illness as of August 12, 2009 [the date he was transferred to MMBH from Sharpe Hospital], with a diagnosis clarified as pedophilia and with psychological testing indicating that he has primary sexual interest in females ages 7 to 13."  (ECF No. 24-6, at 9.)  He opined that the petitioner was eligible for release to a group home but that he did not recommend the family's plan for supervision and treatment at home.  (*Id.*, at 11-14.)  On November 16, 2010, Judge Bloom entered an Order in which he found that "the home placement plan offered by the defendant's family is inappropriate and insufficient to protect the well-being of any potential future victim of the defendant."  (ECF No. 24-17.)

During the ensuing six months and at a hearing on March 18, 2011, staff at MMBH complained that Michael Parsons's brother, William Parsons, was interfering with Michael's treatment.  (ECF No. 24-7.)  This culminated in an Order entered March 18, 2011, which forbade William Parsons from contacting or communicating with MMBH staff or residents, including his brother.  (ECF No. 24-18.)[4]

---

[3] This "Return on Further Evaluation" was subsequently amended by Order entered September 22, 2011, to the effect that Michael Parsons is "not competent to stand trial."  (ECF No. 24-19.)
[4] By Order entered October 18, 2010, the Circuit Court of Kanawha County (Zakaib, J.) appointed Carol Parsons, the petitioner's mother, and William Parsons as co-guardians for Michael Parsons, a protected person.  *In re Michael Parsons*, No. 10-G-69.

The next hearing took place on September 15, 2011, at which Dr. Miller testified again.  He stated that due to family interference, placement at a group home was impractical.  (ECF No. 24-8, at 4-5.)  He proposed a plan that the petitioner be returned to his home with electronic monitoring, continuation of medications, treatment with Dr. Saar, plus sex offender counseling.  (*Id.*, at 5-6.)  Dr. Miller indicated that he had requested the Statewide Forensic Coordinator to initiate a placement plan.  (*Id.*, at 6.)  As Dr. Miller testified, Judge Bloom asked, "I assume that you are still of the view that Mr. Parsons is not competent to stand trial and you don't anticipate his regaining competency in the foreseeable future; is that correct?"  (*Id.*, at 7.)  Dr. Miller replied, "That's correct."  (*Id.*)  Dr. Miller and Judge Bloom then had the following exchange:

> THE WITNESS:  I may be incorrect, but my recollection of your last order is that Mr. Parsons was designated not guilty by reason of mental illness.  That could have been an error or could have been - -
> THE COURT:  (Interposing)  Yeah, that is an error.  He has not been found guilty.  He has not been convicted of any crime.
> THE WITNESS:  Okay.  I wanted to call that to your attention and let you know that - -
> THE COURT:  (Interposing)  We'll correct that in this order.  Right, Mr. Giggenbach?
> MR. GIGGENBACH:  Yes, your Honor.
> THE COURT:  Okay.  He was found not competent to stand trial. So you're correct in pointing that out, Dr. Miller.  I appreciate that.

(*Id.*, at 11.)    The remainder of the hearing concerned the terms of a plan for the petitioner's return to his home.  An Order memorializing the hearing was entered on September 22, 2011.  (ECF No. 24-19.)  The Order includes the statement that "[a]ny prior Order indicating the defendant is 'not guilty by reason of insanity' is **AMENDED** to the defendant is 'not competent to stand trial.'"  (*Id.*)  Judge Bloom indicated that he would conduct another hearing upon further report on a placement plan by Dr. Miller. (*Id.*)

The next hearing occurred on March 8, 2012.  Dr. Miller testified that he was still of the opinion that the petition is not competent to stand trial.  (ECF No. 24-9, at 5.)  He stated that an independent forensic dangerousness assessment by a West Virginia University faculty member indicated that the petitioner "was not sufficiently stable or was too dangerous" to be placed back in his home.  (*Id.*)  Dr. Miller reported that the Forensic Services Review Board had vetoed the community placement plan.  (*Id.*, at 5-6.)  The petitioner was evaluated by three group homes, all of which rejected him.  (*Id.*, at 8-9.)  Dr. Miller summarized the situation: "So where we stand right now is that Mr. Parsons has been deemed too dangerous by the independent evaluator and the forensic review board to go home, and the three facilities that he would be eligible for he's been rejected because of . . . family interference."  (*Id.*, at 9.)  Judge Bloom decided to limit family contact to one 30 minute phone call or visit a week from his mother, to be monitored.  (*Id.*, at 14-15.)  An Order was entered to that effect on March 13, 2012.  (ECF No. 24-20.)

Due to continued interference by the petitioner's family, another hearing was held on March 23, 2012.  (ECF No. 24-10.)  Attorney Dana Eddy appeared for the family and indicated that the family was willing to abide by conditions imposed on them or Michael Parsons by the court.  (*Id.*, at 12.)  Judge Bloom noted that the family has no standing to participate in a criminal case.  (*Id.*, at 12-13.)  Judge Bloom further stated, "I'm not granting status such as to allow any appeals of any of my decisions or actions in this court to allow party status to give your clients any rights."  (*Id.*, at 14-15.)  Georgette Bradstreet, Statewide Forensics Coordinator, testified as to the family interference and the petitioner's acts of violence at MMBH.  (*Id.*, at 27-37.)

13

By Order entered July 26, 2012, the petitioner was allowed additional visits and phone calls from his family, except for Williams Parsons.  (ECF No. 24-21.)

At a hearing on February 14, 2013, Judge Bloom heard more testimony as to his family's interference and the petitioner's corresponding lack of progress in treatment.  (ECF No. 24-11.)

Throughout the proceedings, the petitioner has been represented by several court-appointed attorneys.  None of his attorneys has filed a petition for appeal from any of the Circuit Court's orders or "Findings."  As noted, the petitioner has never been convicted of an offense.

### Exhaustion of State Remedies

The respondent asserts that this case should be dismissed because the petitioner has failed to exhaust his state remedies, as required by 28 U.S.C. § 2254(b)(1)(A).  (ECF No. 7, at 6.)  The petitioner has filed a reply in which he argues that there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant, citing 28 U.S.C. § 2254(b)(1)(B).  (ECF No. 11, at 3-6.)

By Order entered March 1, 2013, the undersigned set a hearing and directed counsel to address several points, including whether the "Court's Finding on Defendant's Competency to Stand Trial" entered May 7, 2009, is a final and appealable order.  At the hearing, the respondent asserted that it is a final and appealable order, citing to *State v. Smith*, 482 S.E.2d 687 (W. Va. 1996).

The undersigned proposes that the presiding District Judge **FIND** that (a) there is an absence of available State corrective process, (b) circumstances exist that render

14

such process as may be utilized ineffective to protect the rights of the petitioner, and (c) the action should not be dismissed for failure to exhaust state remedies.

**Absence of available State corrective process**

No judgment has been entered in *State v. Parsons*.  Rule 37(b) of the West Virginia Rules of Criminal Procedure allows for the filing of a notice of intent to appeal "after the entry of the judgment, decree or other order appealed from."  No judgment, decree or other order sets forth the court's exercise of jurisdiction for five years over Michael Parsons; the document is captioned as a "Finding."  Moreover, the procedural history detailed above illustrates that the Circuit Court's opinion as to the petitioner's mental state, or the number of years the petitioner is under the court's jurisdiction, is subject to change without notice.

*State v. Smith*, the case on which the respondent relies, is inapposite.  In that case, the defendant was charged with second degree murder.  482 S.E.2d at 691.  She underwent forensic evaluations relating to her competence to stand trial and her criminal responsibility.  *Id.*  The prosecution and defense filed a stipulation as to the facts, including her lack of criminal responsibility due to mental illness.  *Id.*  After delays attributable to an amendment of the applicable statute, the circuit court *entered an order* that Ms. Smith was not guilty by reason of mental illness.  *Id.*, at 692.  Her counsel took a direct appeal.  As noted by the Supreme Court of the United States in *Jones v. United States*, 463 U.S. 354, 363 (1983), "[a] verdict of not guilty by reason of insanity establishes two facts: (i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness."  In Michael Parsons's case, there has been no order, no verdict, and no finding that he committed an act that constitutes a criminal offense.

**Circumstances rendering such process ineffective**

If the presiding District Judge concludes that the Circuit Court's "Finding" was an appealable order, the question must arise as to whether the petitioner's attorneys were ineffective in their representation of him by failing to file and pursue a notice of appeal. The petitioner is certainly incapable of representing himself, and the Circuit Court did not permit his guardians to participate in the criminal case.  Under circumstances in which the accused is incompetent to stand trial and to assist his counsel in his defense, an attorney's failure to file and pursue a notice of appeal renders an appeal impossible. If an incompetent petitioner's attorney is not actively protecting the petitioner's right not to suffer deprivation of liberty without due process of law, then who will protect his right?  In *Humphrey v. Cady*, 405 U.S. 504 (1972), the Supreme Court held that waiver of state court remedies such as will bar federal habeas corpus must be the product of an understanding and knowing decision by the petitioner himself, who is not necessarily bound by the decision or default of his counsel.  Having been found to be incompetent, Michael Parsons cannot reasonably understand and waive his state and federal habeas corpus remedies.

**Lack of Admissible Evidence**

The only charging document in this case is the Criminal Complaint signed by a City of Nitro, West Virginia patrolman.  (ECF No. 24-23.)  The undersigned notes that the prosecutor stated unequivocally, on February 26, 2010, that the Prosecuting Attorney of Kanawha County would not "indict the case ever, because there's no point." (ECF No. 24-5, at 7.)  The victim, now about six years old, is not a competent witness. The petitioner (who has a mental age of about eight) confessed to the officer, but he was and is not competent to waive his Fifth Amendment privilege against self-incrimination.

16

No other evidence is in the record.  There has been neither a stipulation of facts filed nor an independent adjudication of facts based on admissible evidence in the Circuit Court of Kanawha County.

### Equal Protection

In *Jackson v. Indiana*, 406 U.S. 715, 730 (1972), the Supreme Court held that it is a violation of equal protection to subject a "mentally defective" person charged with an offense to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all other persons not charged with an offense. Theon Jackson was described as a "mentally defective deaf mute with a mental level of a pre-school child" with limited sign language.  406 U.S. at 717.  He was charged with separate robberies of two women.  (*Id.*)

The statutory scheme for consideration of incompetent or mentally ill persons charged with an offense is set forth above at page six.  The civil commitment of individuals is governed by W. Va. Code § 27-4-1 *et seq.*  (voluntary hospitalization of those who are mentally ill, intellectually disabled or addicted) and W. Va. Code § 27-5-1 *et seq.* (involuntary hospitalization of those who are mentally ill or addicted).  The statutory definition of "intellectual disability" (formerly "mental retardation") is "significantly subaverage intellectual functioning which manifests itself in a person during his or her developmental period and which is characterized by his or her inadequacy in adaptive behavior."  W. Va. Code § 27-1-3.

Prior to 2001, W. Va. Code § 27-5-1 *et seq.* authorized the involuntary hospitalization of the mentally retarded.  In 2001, the West Virginia Legislature amended W. Va. Code § 27-5-1 to delete references to "mentally incompetent" and "mentally retarded."  Acts 2001, c. 194.  Thus in West Virginia, there is no statutory

mechanism for the involuntary hospitalization of a mentally retarded or intellectually disabled person who is not charged with an offense.

Section 27-5-4(k) provides that during a proceeding for involuntary hospitalization of a person who is mentally ill or addicted,

> (1) . . . the circuit court or mental hygiene commissioner shall make findings as to the following:
> (A)  Whether the individual is mentally ill or addicted;
> (B)  Whether, because of illness or addiction, the individual is likely to cause serious harm to self or others if allowed to remain at liberty;
> (C)  Whether the individual is a resident of the county . . .;
> (D)  Whether there is a less restrictive alternative than commitment appropriate for the individual.  The burden of proof of the lack of a less restrictive alternative than commitment is on the person or persons seeking the commitment of the individual.
> (2)  The findings of fact shall be incorporated into the order entered by the circuit court and must be based upon clear, cogent and convincing proof.

The involuntary commitment standard for those not charged with an offense (§ 27-5-4(k)) is whether "the individual is likely to cause serious harm to self or others if allowed to remain at liberty."  W. Va. Code § 27-1-12 provides a detailed definition of the phrase "likely to cause serious harm."  The standard of release for those not charged with an offense is "whether there is a less restrictive alternative than commitment appropriate for the individual," and the burden of proof is on the person seeking the commitment.  The standard of proof for such persons is "clear, cogent and convincing proof."  W. Va. Code § 27-5-4(k)(2).

The commitment standard for those persons found to be incompetent to stand trial and not substantially likely to attain competency is simply whether the person is charged with a misdemeanor or felony which involves an act of violence against a person, with no standard of proof as to the evidence of the crime.  W. Va. Code § 27-6A-3(h).  The standard of release for incompetent persons facing a criminal charge is

whether the defendant is no longer "a significant danger to self or others," in which case the defendant may be released to "the least restrictive environment to manage the defendant and that will allow for the protection of the public," but the court maintains its jurisdiction over the defendant.  While competence to stand trial is determined by a preponderance of the evidence, there is <u>no</u> stated standard of proof with respect to whether a defendant is a significant danger to self or others.

Despite our common law's presumption of innocence, in West Virginia there is a significant difference in the involuntary commitment of those charged with an offense versus those not charged with an offense.  As in *Jackson*, there is little likelihood of improvement in Michael Parsons's intellectual functioning or competence to stand trial. Absent the criminal charge, the State would have had no statutory authority to hospitalize him involuntarily as an intellectually disabled person.  The State, if appropriate, would proceed under the statute generally applicable to all other citizens: the involuntary hospitalization of mentally ill or addicted persons.  Because he faces a criminal charge, the State is not required to meet a standard of proof of dangerousness. If he did not face a criminal charge, in order to commit him, the State would have been required to prove that he is a danger by "clear, cogent and convincing proof."  The holding in *Jackson* is stated as follows:

> [W]e hold that by subjecting Jackson to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses, and by thus condemning him in effect to permanent institutionalization without the showing required for commitment or the opportunity for release afforded by [the statute governing the mentally ill] or [the statute governing "feeble-minded" persons], Indiana deprived petitioner of equal protection of the laws under the Fourteenth Amendment.

19

406 U.S. at 730.   The petitioner has been subjected to a more lenient commitment standard (whether he committed an act of violence with no standard of proof) and a more stringent release standard (whether he poses a significant danger to self or others with no standard of proof) than those generally applicable to all others not charged with an offense.   Based on *Jackson*, the undersigned proposes that the presiding District Judge **FIND** that W. Va. Code § 27-6A-3(h) deprives the petitioner of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States and is unconstitutional as applied to him.[5]

### Due Process

West Virginia Code § 27-6A-3(h) provides that an incompetent criminal defendant, charged with an offense which involves an act of violence against a person, "shall remain under the court's jurisdiction until the expiration of the maximum sentence unless the defendant attains competency to stand trial and the criminal charges reach resolution or the court dismisses the indictment or charge."   So long as the accused continues to constitute a significant danger to self or others, s/he remains under the court's jurisdiction until the expiration of the maximum sentence.   W. Va. Code § 27-6A-3(i).   There remains some question as to whether the maximum sentence faced by the petitioner should have been five or 25 years; it is unclear whether Judge Bloom may decide that the correct maximum sentence is 25 years and so rule.

At the petitioner's first hearing on December 23, 2008, he was permitted to remain on home confinement during his evaluation by Dr. Smith.   (ECF No. 24-12.)   At his second hearing on February 10, 2009, there was no dispute that the petitioner is

---

[5] In 1993, the Supreme Court of the United States upheld, against an equal protection challenge, Kentucky statutes which set a lower standard of proof in involuntary civil commitments for mental retardation as opposed to involuntary civil commitments for mental illness.  *Heller v. Doe*, 509 U.S. 312, 321-28 (1993). The decision did not address those charged with crimes and did not cite to *Jackson*.

incompetent, is not substantially likely to attain competency, and was not criminally responsible at the time of the alleged offense.  (ECF No. 24-2.)  The Circuit Court then ordered him to undergo a dangerousness evaluation at Sharpe Hospital, to which he self-reported.  (ECF No. 24-13.)

"[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  *Addington v. Texas*, 441 U.S. 418, 425 (1979).  In *Jackson*, the Supreme Court held

> that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future.  If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. * * *  [W]e do not think it appropriate for us to attempt to prescribe arbitrary time limits.  We note, however, that petitioner Jackson has now been confined for three and one-half years on a record that sufficiently establishes the lack of a substantial probability that he will ever be able to participate fully in a trial.

406 U.S. at 738-39.

At the hearing on March 13, 2013, the respondent contended that W. Va. Code § 27-6A-3(h) is consistent with *Jackson*, and relied on *Jones v. United States*, 463 U.S. 354 (1983).  *Jones* is inapposite, as it concerns those who are found to be not guilty by reason of insanity.

Since February 10, 2009, there has been agreement among the parties, the Circuit Court and all the evaluating psychiatrists and psychologists that Michael Parsons is not substantially likely to attain competency.  Pursuant to the holding in *Jackson*, the undersigned proposes that the presiding District Judge **FIND** that the petitioner has been held an unreasonably long period of time, more than four years, in violation of his

right to due process of law.  The State failed to institute civil commitment proceedings (which no longer exist with respect to the intellectually disabled).  Thus it appears that *Jackson* and W. Va. Code § 27-6A-3(h), which provides that "[t]he defendant shall then be immediately released from the facility unless civilly committed," mandate that the petitioner be released.

## Recommendation

It is respectfully **RECOMMENDED**  that the petitioner's Petition for a Writ of Habeas Corpus be granted, the respondent's Motion to Dismiss (ECF No. 8) be denied, and relief be provided as follows:

1.  Declare that the continued confinement of the petitioner at MMBH is in violation of his constitutional rights;

2.  Order the petitioner released from the Circuit Court's jurisdiction and from MMBH on home confinement with electronic monitoring and no unsupervised access to children;

3.  Declare that W. Va. Code § 27-6A-3(h) is unconstitutional as applied to persons who are intellectually disabled, incompetent to stand trial, and unlikely to attain competency; and

4.  Such other relief as may be appropriate.

## Notice

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the

date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit it to Judge Johnston and counsel of record.  The Clerk is further directed to provide courtesy copies of this Proposed Findings and Recommendation to the Hon. Louis H. Bloom, Assistant Prosecuting Attorney Fred J. Giggenbach, and Assistant Public Defender Richard E. Holicker.

<u>March 25, 2013</u>

Mary E. Stanley
United States Magistrate Judge